## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **DAVID EARL BEARD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No.  15-CV-0163-JED-PJC |
| | ) | |
| **ROBERT PATTON, Director;** | ) | |
| **JANET DOWLING, Warden;** | ) | |
| **CARL BEAR, Deputy Warden;** | ) | |
| **SHAWN PRICE, Chief of Security;** | ) | |
| **JOYCE CARTWRIGHT, Unit Manager;** | ) | |
| **SGT. MARSHALL, Corrections Officer;** | ) | |
| **SGT. PINKERTON, Corrections Officer,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

This is a 42 U.S.C. § 1983 civil rights action commenced by Plaintiff, David Earl Beard, a prisoner appearing *pro se* and proceeding *in forma pauperis* (*see* Doc. 4).  On July 22, 2015, Defendants Patton, Dowling, Bear, Price, Cartwright, Marshall, and Pinkerton filed a motion to dismiss (Doc. 15) and a Special Report (Doc. 16).  Plaintiff filed a response to the motion (Doc. 25), Defendants filed a reply to the response to the motion (Doc. 27), and Plaintiff filed a surreply to the motion (Doc. 28).  On December 29, 2015, the Court entered an Order which, among other things, notified the parties that Defendants' motion to dismiss would be treated as a Rule 56 motion for summary judgment and that the parties were to present any additional materials not previously provided within twenty-one (21) days of the entry of the Order (*see* Doc. 32).  Plaintiff filed a supplemental "brief in answer to motion for a summary judgment" (Doc. 33), and no supplemental materials were provided by the defendants.

For the reasons discussed below, Defendant Bear is dismissed with prejudice from this action at Plaintiff's request, and the motion for summary judgment is granted.

## *BACKGROUND*

Plaintiff is currently incarcerated at Dick Conner Correctional Center (DCCC) in Hominy, Oklahoma.  In his complaint (Doc. 1), Plaintiff alleges that Defendants violated his constitutional rights under the Eighth Amendment because they acted "with deliberate indifference to a prison condition that exposes a prisoner to an unreasonable risk of serious harm" and because "[p]rison officials acted with deliberate indifference when they ignored an obvious and serious danger"[1] (*id.* at 11, ¶¶ 56-57 (citations omitted)).  Specifically, Plaintiff complains that his "[e]xposure to large amounts of environmental tobacco smoke . . . presents an unreasonable risk of serious harm" (*id.* at 12, ¶ 58 (citation omitted)).

Plaintiff states that, while in previous correctional facilities, he observed inmates smoking in areas of the housing units where the guards could not readily see them, in violation of Oklahoma Department of Corrections (ODOC) policy (*see id.* at 5, ¶ 15; 7, ¶ 30).  While at Jess Dunn Correctional Center, Plaintiff claims he "had to be placed on an inhaler for breathing problems," *id.* at 8, ¶ 37, and that he "was placed on a second inhaler" while in the Choctaw County Jail (*id.* at 8, ¶ 38).  Plaintiff also states that he was "taken to the Choctaw County Emergency Medical Center for breathing problems."  *Id.*  While housed at these previous facilities, Plaintiff filed two requests to staff (*id.* at 5, ¶¶ 17-20), "contacted" prison officials about the problem (*id.* at 7, ¶¶ 31-32), and filed a civil complaint in LeFlore County District Court, Case No. CJ-13-72 (*id.* at 6, ¶ 23).

Plaintiff was transferred from the Choctaw County Jail to DCCC on January 8, 2014 (*id.* at 8, ¶¶ 36, 39).  Plaintiff alleges that the problems with inmates smoking in the housing units

---

[1]     Throughout this Opinion and Order, the Court has corrected errors in spelling and grammar when quoting Plaintiff.

continued at DCCC (*id.* at 8-9, ¶ 40).  The uncontroverted evidence shows that, five days after his transfer to DCCC, Plaintiff filed a request for health services, stating that he was "being treated for asthma.  All this cigarette smoke down here.  I can't breath" (Doc. 16-17 at 2).  A health care provider "assessed [Plaintiff] for breathing problems," *id.*, and found that Plaintiff "was not having trouble breathing" at the time he was seen (Doc. 16-18 at 3).  The health care provider "instructed [Plaintiff] to go to his case manager" with his complaint about the environmental tobacco smoke (ETS) (Doc. 16-17 at 2).  Plaintiff "made contact with his case manager" to complain about the problem of inmates smoking in the housing units (Doc. 1 at 9, ¶ 42), and then submitted a request to staff to the unit manager (*id.* at 9, ¶ 43).  In his request to staff, dated January 30, 2014,  Plaintiff stated that he had been "treated for breathing problems for the last 9 months," and that he was on "2 different inhalers" (Doc. 16-21 at 2).  In response, the DCCC unit manager told Plaintiff that "[t]he use of any tobacco product in this unit is prohibited and this unit is a 'tobacco-free environment.'  Control measures are used to ensure staff and offenders do not smoke and are not involuntarily exposed to second hand smoke or other tobacco products" (*id.)*.

In a grievance dated February 20, 2014, Plaintiff claimed that he had suffered two asthma attacks as a result of breathing ETS, although it is not clear whether the asthma attacks Plaintiff referenced occurred at DCCC or at previous facilities (Doc. 16-22 at 2).  The reviewing authority told Plaintiff that DCCC "strictly follows the guidelines of OP-150601 'Tobacco Regulations'"[2] (*id.* at 4).

---

[2]    The Court takes judicial notice that, pursuant to OP-150601, "[t]he use of any tobacco or tobacco like product on any and all properties owned, leased, or contracted for use by the Oklahoma Department of Corrections, including but not limited to all buildings, land and vehicles owned, leased, or contracted for use by agencies or instrumentalities of the department is prohibited" (*see* https://www.ok.gov/doc/documents/op150601.pdf).

Plaintiff then appealed to the Administrative Review Authority (ARA) (Doc. 1 at 9, ¶ 46). On April 14, 2014, the director's designee returned Plaintiff's appeal to him unanswered because it contained two errors: "[m]ore than (1) issue – only 1 issue allowed per grievance" and "[y]ou did not state in your grievance the action you believe the reviewing authority should take" (*id.* at 36). Nothing in the summary judgment record suggests that Plaintiff resubmitted an appeal to the ARA. Instead, Plaintiff asserts that "[p]olicy OP-150601 clearly states what action should be taken to enforce this policy. Plaintiff should not have to tell the administration this" (*id.* at 9-10, ¶ 46). Plaintiff avers that "at this time [he had] completed the [ODOC] Grievance Procedure" (*id.* at 10, ¶ 47).

On February 26, 2015, Plaintiff submitted two additional requests to staff (Docs. 16-24, 16-25). In those requests, Plaintiff did not complain about breathing problems (*see* Docs. 16-24, 16-25). Instead, Plaintiff stated that ETS created an "unhealthy living environment" within the housing unit, (Doc. 16-25 at 3), and that "ETS is a killer. 50,000 people a year die from exposure to other people's tobacco smoke" (Doc. 16-24 at 3). DCCC staff responded to both requests (*id.* at 2; Doc. 16-25 at 2). On March 12, 2015, Plaintiff submitted a grievance (Doc. 16-26 at 2-3). Plaintiff asserted that:

> There are a number of hazardous fumes in ETS. Some are radioactive, others are used in chemical warfare. Add to this the ink on the pages from books they use to smoke with you have a highly toxic cocktail of hazardous waste. This has and continues to have an adverse affect on my health.

(*Id.* at 3). Plaintiff did not claim that he was currently suffering from any breathing difficulties and did not specify any current medical symptoms related to breathing ETS (*id.* at 2-3). The reviewing authority responded that DCCC "strictly follows the guidelines of OP-150601 'Tobacco Regulations'" (*id.* at 5). Plaintiff did not appeal to the ARA because he believed that he had

"previously completed the grievance process," (Doc. 1 at 11, ¶ 52; *see id.* at 9-10, ¶¶ 46-47), and could "forego appealing to the Director again" (*id.* at 11, ¶ 52).

On April 3, 2015, Plaintiff filed his civil rights complaint (Doc. 1), claiming that Defendants violated his Eighth Amendment rights when they acted with "deliberate indifference to a prison condition that exposes a prisoner to an unreasonable risk of serious harm" (*id.* at 11, ¶ 56 (citation omitted)). Plaintiff alleges that "[e]xposure to large amounts of environmental tobacco smoke . . . presents an unreasonable risk of serious harm" (*id.* at 12, ¶ 58 (citation omitted)). Plaintiff also states that:

> By placing double bunking in the common areas, thereby blocking the correctional officer's view of about 80% of the housing unit and severe understaffing, one (1) correctional officer to oversee 230+ inmates, the administration has created an environment where it is impossible for one (1) correctional officer to enforce the ban on smoking. When you combine this with the gross idleness and excessive noise that this has created, this has produced an environment that is highly explosive and hazardous. Thereby violating petitioner's 8th Amendment rights.

(*Id.* at 13, ¶ 63). In his request for relief, Plaintiff seeks the following remedies:

1. Granting Plaintiff a declaration that the acts and omissions described herein violate his rights under the Constitution and laws of the United States, and

2. A preliminary and permanent injunction ordering defendants to:

   A. Remove all tobacco and tobacco like products from the minimum security housing unit,

   B. Remove all the top bunks in the common areas of the minimum security housing unit,

   C. Have at least three (3) correctional officers on duty in the minimum security unit on each shift,

   D. That at least two (2) of these be patrolling the minimum security unit at all times.

3. Granting Plaintiff compensatory damages in the amount of $250,000, for the irreversible damage that has been done to his health,

4.  Plaintiff seeks punitive damages in the following amounts:

   A.  Against Defendant Robert Patton $100,000

   B.  Against Defendant Janet Dowling $75,000

   C.  Against Defendant Carl Bear $50,000

   D.  Against Defendant Shawn Price $25,000

   E.  Against Defendant Joyce Cartwright $25,000

   F.  Against Defendants Sgt. Pinkerton and Sgt. Marshall $10,000 each, jointly and
       severally,

5.  Plaintiff also seeks a jury trial on all issues triable by jury,

6.  Plaintiff also seeks recovery of his costs in this suit, and

7.  Any additional relief this Court deems just, proper, and equitable.

(*Id.* at 13-15, ¶¶ 64-70).

## *ANALYSIS*

### A.    **Constitutional Standards Governing Plaintiff's Claims**

### 1. Summary judgment standard

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine

dispute of material fact and the moving party is entitled to judgment as a matter of law.  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250

(1986); *Kendall v. Watkins*, 998 F.2d 848, 850 (10th Cir. 1993).  "The plain language of Rule 56(c)

mandates the entry of summary judgment, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*,

477 U.S. at 322.  "Summary judgment is appropriate if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

6

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996) (citation omitted).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Durham v. Xerox Corp.*, 18 F.3d 836, 838-39 (10th Cir. 1994).

### 2. Eleventh Amendment immunity

The Eleventh Amendment bars a suit in federal court against a state or an agency of a state, absent a specific waiver of immunity by the State or express abrogation of the State's immunity by Congress.  *Frazier v. Simmons*, 254 F.3d 1247, 1252-53 (10th Cir. 2001).  The *Ex parte Young* doctrine may also allow a "plaintiff to circumvent the Eleventh Amendment" if the plaintiff seeks "prospective equitable relief" but not "retroactive relief." *Id.* at 1253 (citation omitted); *see Ex parte Young*, 209 U.S. 123 (1908).  In passing 42 U.S.C. § 1983, Congress did not abrogate state sovereign immunity.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *see Quern v. Jordan*, 440 U.S. 332, 345 (1979).

When a plaintiff sues a defendant in his or her official capacity, the court will treat the suit "as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citation omitted).  Such a suit is truly against the office and not the natural person.  *Will*, 491 U.S. at 71.  Therefore, officials sued in their official capacities do not qualify as "persons" for the purpose of § 1983, *id.*, and are immune from claims for money damages.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120 (1984).  However, "official-capacity actions for prospective relief are not treated as actions against the State." *Graham*, 473 U.S. at 167 n.14 (citation omitted) (citing *Ex parte Young*, 209 U.S. 123).

### 3. Failure to protect/failure to provide adequate medical care

The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted).  To assert an Eighth Amendment claim, a plaintiff must satisfy a two-prong test – an objective component showing that the deprivation suffered or the conduct challenged was "objectively sufficiently serious," and a subjective component showing that the defendant had a sufficiently culpable state of mind or was "deliberately indifferent" to the inmate's safety.  *Id.* at 834 (internal quotation marks and citations omitted); *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir. 1985).

The Supreme Court defines "deliberate indifference" as knowing and disregarding an excessive risk to an inmate's health or safety.  *Farmer*, 511 U.S. at 837; *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008).  "In other words, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996) (internal quotation marks and citation omitted).  It is not enough to establish that the official should have known of the risk of harm.  *Farmer*, 511 U.S. at 838.  "To prevail on the subjective component, the prisoner must show that the defendants knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (internal quotation marks and citation omitted).

Negligence does not state a claim under § 1983 for deliberate indifference to medical needs.

8

*See Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997).  When asserting a claim of failure to provide adequate medical care, the objective element is satisfied "if the condition has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (internal quotation marks and citation omitted).

### 4.  Exposure to environmental tobacco smoke

When an inmate raises a claim alleging that his exposure to ETS violates the Eighth Amendment's prohibition against cruel and unusual punishment, the Supreme Court has held that the inmate must first show that, objectively, he himself is being exposed to unreasonably high levels of ETS.  *Helling v. McKinney*, 509 U.S. 25, 35 (1993).  He must then show that, subjectively, prison officials have shown deliberate indifference to his serious medical needs or his health and safety by allowing him to be exposed to ETS.  *Id.* at 32; *see Seiter*, 501 U.S. at 303 ("Whether one characterizes the treatment received by [the prisoner] as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the 'deliberate indifference' standard articulated in *Estelle*." (internal quotation marks and citations omitted)).  To establish deliberate indifference, "Plaintiff must show that Defendants were aware of [his] medical condition, knew that second-hand smoke was exacerbating [his] condition and refused to do anything about it."  *Hammond v. Intervention*, No. 14-CV-00242-MEH, 2015 WL 3494393 at *11 (D. Colo. June 2, 2015) (unpublished)[3] (citation omitted).  As the Tenth Circuit has noted, a prisoner is "not entitled to a completely smoke free correctional facility."  *Barry v. Wilson*, No. 95-1419,

---

[3]     This and other unpublished opinions are not precedential but are cited for their persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

1996 WL 366217, *2 (10th Cir. July 2, 1996) (unpublished) (opinion handed down prior to ODOC's implementation of a no-smoking policy); *see also Mansoori v. Lappin*, No. 04-3241-JAR, 2007 WL 401290, at *10 (D. Kan. Feb. 1, 2007) (unpublished) (quoting *Barry*, 91 F.3d 159, and contrasting Plaintiff's assertion that he has the right to a smoke free environment with the constitutional standard set out in *Helling*); *see generally Clemmons v. Bohannon*, 956 F.2d 1523, 1528 n.1 (10th Cir. 1992) (finding that accommodations other than a completely smoke-free environment can be satisfactory under the Eighth Amendment).

The adoption and administration of a policy which restricts exposure to ETS "will bear heavily on the inquiry into deliberate indifference." *Helling*, 509 U.S. at 36-37; *see Bowen v. Taft*, 62 F. App'x 117, 118 (6th Cir. 2003) (unpublished) (noting that, even though "imperfectly enforced," Defendants' no-smoking policy "negates any claim that they are deliberately indifferent." (citations omitted)). Mere imperfect enforcement of a policy does not amount to deliberate indifference. *See Franklin v. Dist. of Columbia*, 163 F.3d 625, 636 (D.C. Cir. 1998); *see also Moorer v. Price*, 83 F. App'x 770, 773 (6th Cir. 2003) (unpublished); *Brown v. Head*, 190 F. App'x 808, 810 (11th Cir. 2006) (unpublished) ("The lack of enforcement of the existing smoking policy at best shows mere negligence and is insufficient to demonstrate deliberate indifference." (citations omitted)). Additionally, general statements and "wholly conclusory allegations are insufficient to state a cognizable claim for relief." *Wilson v. Hofbauer*, 113 F. App'x 651, 653 (6th Cir. 2004) (unpublished) (citation omitted) (noting that while the plaintiff had alleged imperfect enforcement of the no-smoking policy, plaintiff "failed to allege a single incident where a named defendant was aware that a smoking violation was occurring, but did not act"); *Pepe v. Lamas*, 15-CV-01688, 2015 WL 5693303, at *3 n.1 (M.D. Pa. Sept. 28, 2015) (unpublished) ("Such general allegations of

'imperfect enforcement of a non-smoking policy do[] not equate to deliberate indifference.'"
(citations omitted)).

### 5. Supervisor liability

"Personal participation is an essential allegation in a § 1983 claim." *Bennett v. Passic*, 545
F.2d 1260, 1262-63 (10th Cir. 1976) (citations omitted); *see Garrett v. Stratman*, 254 F.3d 946, 950
n.4 (10th Cir. 2001) (noting that an official must have "played a role in the challenged conduct" to
be liable for an Eighth Amendment violation).  As a result, government officials have no vicarious
liability in a § 1983 suit for the misconduct of their subordinates because "there is no concept of
strict supervisor liability under section 1983." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996)
(internal quotation marks and citation omitted).  Instead, a supervisor is liable only if he or she is
"personally involved in the constitutional violation[] and a sufficient causal connection [] exist[s]
between the supervisor and the constitutional violation." *Serna v. Colo. Dep't of Corr.*, 455 F.3d
1146, 1151 (10th Cir. 2006) (internal quotation marks omitted and citation omitted); *see Schneider
v. Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (requiring a plaintiff to show
an 'affirmative link' between the supervisor and the constitutional violation).  A plaintiff may
establish § 1983 liability of a defendant-supervisor by demonstrating that "(1) the defendant
promulgated, created, implemented or possessed responsibility for the continued operation of a
policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind
required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185,
1199-1200 (10th Cir. 2010) (citation omitted).  However, a supervisor's mere denial of a grievance,
even with knowledge of the alleged violation, is insufficient to establish the connection needed for
personal involvement under § 1983.  *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009);

*Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir. 2012); *see Duncan v. Hickenlooper*, No. 15-1034, 2015 WL 7567465, at *5 (10th Cir. Nov. 25, 2015) (unpublished).

**B.     Defendants' Dispositive Motion (Doc. 15)**

In their motion, Defendants assert that, based on Eleventh Amendment immunity, the Court should dismiss Plaintiff's official capacity claims (Doc. 15 at 3).  Defendants also assert that "Plaintiff failed to affirmatively link these Defendants to any alleged constitutional violations" (*id.* at 3), and that they "were not deliberately indifferent to Plaintiff's serious medical needs" (*id.* at 7).  Additionally, Defendants assert that they are entitled to qualified immunity (*id.* at 6), and that Plaintiff "has failed to sufficiently plead an ongoing constitutional violation and thus is not entitled to injunctive relief" (*id.* at 9).  For the reasons discussed below, the Court grants Defendants' motion.

**1.  Eleventh Amendment immunity**

Plaintiff brings this suit against Defendants – all employees of ODOC – "individually and in their official capacities" (Doc. 1 at 2).  The Tenth Circuit has found that "[O]DOC is an arm of the state" of Oklahoma and is entitled to absolute immunity under the Eleventh Amendment. *Eastwood v. Dep't of Corrs. of State of Okla.*, 846 F.2d 627, 631-32 (10th Cir. 1988).  Because Defendants are all employees of ODOC, Defendants, in their official capacity, are immune from claims for money damages, but they are not immune from claims for prospective injunctive relief. *Frazier*, 254 F.3d at 1253.  Therefore, Plaintiff's claims for money damages against Defendants in their official capacity are dismissed with prejudice based on Eleventh Amendment immunity.

**2.  Defendant Bear is dismissed with prejudice at Plaintiff's request**

In his complaint, Plaintiff states that Defendant Bear is the "Deputy Warden at Dick Conner Correctional Center.  He is legally responsible for the daily operations at Dick Conner Correctional Center and of the welfare of all inmates at that prison" (Doc. 1 at 3, ¶ 6).  Defendant Bear joins the other Defendants in seeking summary judgment (*see* Doc. 15).  In his response to the Defendants' motion, Plaintiff states that "Defendant Bear is no longer at DCCC, so his involvement in the violation of Plaintiff Beard's rights has become a moot point, and he can be dropped as a defendant" (Doc. 25 at 8).  Plaintiff does not specify whether he is requesting Defendant Bear be dismissed with or without prejudice.

"When a party seeking to voluntarily dismiss a claim pursuant to Rule 41(a)(2) is silent as to whether the dismissal should be with or without prejudice, the district judge is required to interpret the motion one way or the other."  *GF Gaming Corp. v. City of Black Hawk*, 405 F.3d 876, 888 (10th Cir. 2005); *see U.S. ex rel Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 810-11 (10th Cir. 2002).  Taking into account the "context in which the [Plaintiff's] motion to dismiss was made," *U.S. ex rel Stone*, 282 F.3d at 811, including Plaintiff's statement that Defendant Bear's "involvement . . . has become a moot point" (Doc. 25 at 8), and the absence of additional arguments related to Defendant Bear in Plaintiff's response (Doc. 25), surreply (Doc. 28), and supplemental brief (Doc. 33), the Court construes Petitioner's request to dismiss Defendant Bear as a motion to dismiss with prejudice pursuant to Fed. R. Civ. P. 41(a)(2), and the Court grants Plaintiff's motion.[4] Therefore, Defendant Bear is dismissed with prejudice at Plaintiff's request.

### 3. Defendants Pinkerton and Marshall are entitled to judgment as a matter of law

---

[4]     Even if Plaintiff had not requested dismissal of Defendant Bear, the Court would find that there is no genuine dispute as to any material fact regarding Plaintiff's claims against Defendant Bear and that Defendant Bear would be entitled to judgment as a matter of law.

In his complaint, Plaintiff mentions Defendants Pinkerton and Marshall only in the "Defendants" section of the complaint (Doc. 1 at 4, ¶¶ 9-10).  There, Plaintiff states that:

> Sgt. Pinkerton is a correctional officer at Dick Conner Correctional Center. She is legally responsible for the daily security in the minimum security unit at Dick Conner Correctional Center and the welfare of all inmates assigned to that unit.
>
> Sgt. Marshall is a correctional officer at Dick Conner Correctional Center. He is legally responsible for the nightly security in the minimum security unit at Dick Conner Correctional Center and the welfare of all inmates assigned to that unit.

(*Id.*).  Plaintiff includes no additional allegations of action or inaction.

In their motion for summary judgment, Defendants argue that Plaintiff fails to "allege anything specific against Defendants" Pinkerton and Marshall and that they cannot be held liable based only on their roles as supervisors absent any personal participation (Doc. 15 at 5).  In his response, Plaintiff states that:

> Defendant Pinkerton as day shift officer is responsible for making sure that all of DOC policies are enforced, she would have to know that the DOC policies are being violated.  When she does make a round of the unit she would have to see the wicks made of tissue, burned on one end that the inmates leave on the floor.
>
> Defendant Marshall is in the same position as Defendant Pinkerton is.

(Doc. 25 at 9).  Plaintiff also states that Defendants "would have to know that the DOC policies are being violated" and "would have to see" the evidence that, at some point in time, some inmates were smoking in the housing unit (*id.*).  Plaintiff presents no evidence to controvert the summary judgment evidence provided by Defendants Pinkerton and Marshall.

Mere knowledge that some inmates at some time were violating the ODOC no-smoking policy is not enough to satisfy the deliberate indifference standard, and Plaintiff does not allege that either Defendant Pinkerton or Marshall knew of a specific incident where an inmate violated the policy and then refused to act.  Plaintiff's allegations of generally ineffective enforcement of the

14

policy are insufficient to establish an affirmative link between Defendants and the alleged constitutional violations.   Therefore, Plaintiff has failed to controvert the summary judgment evidence provided by Defendants Pinkerton and Marshall.   Upon review of the summary judgment record, the Court finds that there is no genuine dispute of material fact as to Defendants Pinkerton and Marshall.   Defendants Pinkerton and Marshall are entitled to judgment as a matter of law on Plaintiff's claims.

### 4.  Defendant Patton is entitled to judgment as a matter of law

In his complaint, Plaintiff states that he "filed an appeal to [Defendant Patton]" (Doc. 1 at 9, ¶ 46).  The director's designee returned the appeal to Plaintiff unanswered because Plaintiff raised more than one issue and failed to identify any remedial actions (*id.* at 36; 9, ¶ 46).  Defendant Patton argues that Plaintiff fails to allege facts showing the he was personally involved in any alleged constitutional violations (Doc. 15 at 5).  Plaintiff responds that "[ODOC] . . . through Defendant Patton's inability to properly staff the various institutions . . . has created an environment where what few correctional officers that are available cannot enforce the no-smoking policy" (Doc. 25 at 8).

The only allegation leveled against Defendant Patton in the complaint is that Plaintiff "filed an appeal to the Director" (Doc. 1 at 9, ¶ 46).  The Tenth Circuit has held that an official's denial of a grievance alone does not suffice to show personal involvement for the purpose of a § 1983 claim. *Gallagher*, 587 F.3d at 1069.  The record shows that the Director never addressed Plaintiff's issues because Plaintiff failed to correct the errors in the appeal (Doc. 1 at 36).  Thus, Defendant Patton did not address the administrative appeal because of Plaintiff's own errors.

In his response to Defendants' motion, Plaintiff seeks to hold Defendant Patton liable based on his role as a supervisor.  Plaintiff asserts that ODOC "created an environment" where employees were unable to effectively enforce the no-smoking policy because of Defendant Patton's "inability to properly staff the various institutions" (Doc. 25 at 8).  Plaintiff fails to allege "any facts to imply [defendant's] knowledge" of an unreasonable threat to Plaintiff's health and safety, without which Plaintiff "fail[s] to nudge [his] claims across the line from conceivable to plausible." *Duncan*, 2015 WL 7567465, at *4 (internal quotation marks and citations omitted).  Additionally, Plaintiff's allegation suggests, at most, negligence by Defendant Patton in the performance of his duties, and negligence alone is not enough to establish supervisor liability.  *Langley v. Adams Cty., Colo.*, 987 F.2d 1473, 1481 (10th Cir. 1993)*; see Green*, 108 F.3d at 1303; *see also Wilson*, 113 F. App'x at 653 ("[I]mperfect enforcement of the policy shows, at most, negligence by the defendants, rather than deliberate indifference." (citations omitted)).

Therefore, Plaintiff has failed to controvert the summary judgment evidence provided by Defendant Patton, and upon review of the summary judgment record, the Court finds that there is no genuine dispute of material fact as to actions of Defendant Patton.  Defendant Patton is entitled to judgment as a matter of law on Plaintiff's claims of failure to protect and failure to provide adequate medical care.

### 5.  Defendants Dowling, Price, and Cartwright are entitled summary judgment

In his complaint (Doc. 1), Plaintiff alleges that Defendants Dowling, Price, and Cartwright engaged in the denial of his grievances and that Defendants Dowling and Price are liable in their capacity as supervisors and for a failure to train.  Additionally, Plaintiff alleges that Defendants Dowling and Cartwright have failed to enforce effectively the ODOC no-smoking policy.  In their

motion, Defendants assert that "Plaintiff's Complaint does not allege any facts linking these Defendants to any of the actions for which he believes entitle him to relief" (Doc. 15 at 5).

Plaintiff has failed to controvert the summary judgment evidence provided by Defendants Dowling, Price, and Cartwright, and upon review of the summary judgment record, the Court finds that there is no genuine dispute of material fact related to Defendants Dowling, Price, and Cartwright.  For the reasons stated below, Defendants Dowling, Price, and Cartwright are entitled to judgment as a matter of law on Plaintiff's claims.

### a.  Denial of grievances

Plaintiff states that he submitted a grievance to Defendant Dowling, an offender request to Defendant Price, and two requests to staff to Defendant Cartwright and received back from them what he considered to be unsatisfactory answers.  After submitting a grievance to Defendant Dowling (Doc. 16-26 at 2-3), Plaintiff received a response from the reviewing authority, Deputy Warden Carl Bear[5] (*id.* at 5).  In his response, the reviewing authority affirmed that a no-smoking policy was in place, stated that DCCC "strictly follows the guidelines," and concluded that "[y]our request to live in an ETS hazard free environment and breathe air that is free of toxin, is granted" (*id.*).  Plaintiff asserts that he complained to Defendant Price, the Chief of Security at DCCC, that "[t]here is a real problem with environmental tobacco smoke in this unit" and provided a description of specific places where inmates smoke (Doc. 16-23 at 2-3), and Defendant Price responded, "information passed on to shift supervisors" (*id* at 2).

Plaintiff also states that he "filed (on 2-26-15) a request to staff with the new unit manager, Joyce Cartwright.  She admits that she understands the problem, but is unable to do anything to stop

---

[5]      Under Fed. R. Civ. P. 41(a)(2), Defendant Bear is dismissed with prejudice pursuant to Plaintiff's request.  *See supra* at 13.

it" (*id.* at 10, ¶ 50).  In his first request to staff to Defendant Cartwright, dated February 26, 2015, Plaintiff stated that "[d]ue to understaffing, the Department's policy . . . on tobacco use is not being enforced.  There is no way that one correctional officer can cover the entire housing unit and oversee 200+ offenders" (Doc. 16-24 at 2).  Plaintiff suggested that Defendant Cartwright "[p]ut two (2) more correctional officers in the unit.  One (1) to patrol each end and do random searches, 24/7, not sit in the office.  When they catch someone with tobacco, take real disciplinary action" (*id.*). Defendant Cartwright responded that "this issue is out of my control" (*id.*).  In his second request to staff to Defendant Cartwright, also dated February 26, 2015, Plaintiff stated that "[d]ue to double bunks in the common area, the correctional officer cannot see large areas of the unit.  This is making it impossible to enforce" the no-smoking policy (Doc. 16-25 at 2).  Plaintiff acknowledged that "it's impossible to remove the double bunks" but stated that Defendant Cartwright should "take affirmative action when an offender is caught with tobacco.  If you come down hard enough this will stop" (*id.* at 2-3).  Defendant Cartwright replied, "I understand what you are saying, but this is not in my control.  All I can say is this is controlled daily.  I wish things were different but [they are] not" (*id.* at 2).

Defendants Dowling, Price, and Cartwright are entitled to summary judgment on Plaintiff's claims.  A mere denial of grievances is not enough to show personal involvement by a Defendant, and Plaintiff has failed to allege any additional facts or present any evidence that would show such personal involvement.  The reviewing authority responded to the grievance Plaintiff directed to Defendant Dowling, stated that a policy was in place, and affirmed that the policy was being enforced.  Defendant Price stated that he would pass the information along.  Defendant Cartwright stated that smoking in the housing unit was addressed daily.  Plaintiff provides no evidence

suggesting that any defendant observed or knew of an inmate smoking in violation of the ODOC no-smoking policy, and failed to take action against the smoker.  *See Wilson*, 113 F. App'x at 653.

### b.  Supervisor liability/failure to train

Plaintiff states that "Defendant Dowling as warden at [DCCC], either knows or should know what the current standard is for involuntarily exposing inmates to high levels of ETS and see that the correctional officers know and enforce these standards" (Doc. 25 at 8).  Plaintiff also states that "Defendant Price in his capacity as chief of security is responsible for . . . seeing that the officers are trained and understand the law.  By assigning undertrained personnel . . . to the minimum security unit, he has violated Plaintiff's rights" (*id.* at 8-9).

Defendants Dowling and Price are entitled to summary judgment on Plaintiff's claim that they are liable based on their role as supervisors.  First, Plaintiff fails to allege facts or present evidence demonstrating that the staff members who report to Defendants Dowling and Price do not know, understand, or enforce the no-smoking policy.  Second, even if such evidence were presented, Defendants are not vicariously liable for their staff members' behavior as there is no strict supervisor liability in a § 1983 suit, *Jenkins*, 81 F.3d at 994, and Plaintiff has not alleged facts or presented evidence demonstrating that Defendants Dowling or Price personally participated in any alleged constitutional violations.  Plaintiff also fails to present any evidence that would support a finding that Defendants did not take reasonable action to supervise their staff and that any failure would rise to the level of deliberate indifference.

Defendants Dowling and Price are entitled to summary judgment on Plaintiff's claim that they are liable for a failure to train.  For a defendant to be held liable in a § 1983 suit based on a

failure to train, the failure must amount to deliberate indifference.  *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).  Plaintiff must demonstrate that:

> "[T]he need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of [his due process] rights, that the policymakers of the [county] can reasonably be said to have been deliberately indifferent to the need for additional training." It isn't enough to "show that there were general deficiencies in the county's training program for jailers."  Rather, a plaintiff must "identify a specific deficiency" that was obvious and "closely related" to his injury so that it might fairly be said that the official policy or custom was both deliberately indifferent to his constitutional rights and the moving force behind his injury.

*Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) (internal quotation marks and citations omitted).

Plaintiff fails to present any evidence of behavior that would show a specific deficiency in the training of staff members under the supervision of Defendants Dowling and Price.  ODOC has a no-smoking policy in place and enforced at DCCC.  Plaintiff fails to identify any incident where an employee knew that a specific inmate was smoking and failed to act or any behavior by staff members which would show a specific deficiency in their training.  Instead, Plaintiff speculates that because some inmates are still smoking within the facility there must be some deficiency in the manner in which staff members are trained.  However, even if Plaintiff could show there are general deficiencies in the training program, those general deficiencies are not enough to state a claim for a failure to train.

### c.  Imperfect enforcement of ODOC no-smoking policy

Plaintiff states that, after being appointed as Warden of DCCC, Defendant Dowling "took no action to remove or stop the use of tobacco at this institution" (Doc. 1 at 10, ¶ 49),  and that "Defendant Price in his capacity as chief of security is responsible for assigning officers to the units . . . . [By] understaffing the minimum security unit, he has violated Plaintiff's rights" (Doc. 25 at

20

8-9).  In response to the dispositive motion, Plaintiff also states that "Defendant Cartwright as unit manager knows that there are high levels of ETS in the housing unit. . . . As head of the disciplinary team in this unit she decides what sanction to impose when someone is caught with tobacco" (*id.* at 9).

Defendant Dowling is entitled to summary judgment on Plaintiff's claim that she acted with deliberate indifference.  Plaintiff does not allege that Defendant Dowling knew of an unreasonable risk to Plaintiff's health or safety and disregarded that risk.  As stated above, Plaintiff fails to allege a single incident where any named defendant was aware that a smoking violation was occurring but did not act.[6]

Defendant Price is entitled to summary judgment on Plaintiff's claim that Defendant Price violated Plaintiff's rights by understaffing the minimum security unit.  Plaintiff presents no evidence showing that Defendant Price was aware that the alleged understaffing presented an unreasonable risk to Plaintiff and that Defendant Price ignored that risk, and he has failed to controvert the summary judgment evidence provided by Defendants. There is no genuine dispute of material fact as to whether Defendant Price was aware that the alleged understaffing presented an unreasonable risk to Plaintiff and ignored that risk.

Defendant Cartwright is entitled to summary judgment on Plaintiff's claim that she acted with deliberate indifference.  Plaintiff asserts that Defendant Cartwright knows that there is a high level of ETS in the minimum security housing unit, yet Plaintiff fails to present any evidence that

---

[6]     Additionally, in his supplemental "brief in answer to motion for a summary judgment," Plaintiff states that "the correctional staff has recovered large amounts of tobacco, not a little but pounds at a time" and that "they have made inroads in this matter" (Doc. 33 at 8).  Plaintiff continues to assert, however, that the level of ETS in the housing unit is still "unreasonable" (*id.*).

would suggest that Defendant Cartwright has been deliberately indifferent to his health or safety. Plaintiff acknowledges that the bunk beds cannot be removed from the minimum security unit, and Plaintiff does not allege that Defendant Cartwright had the authority to hire more correctional officers but chose not to out of deliberate indifference to Plaintiff's health and safety.  Plaintiff presents no evidence demonstrating that Defendant Cartwright failed to take reasonable measures to abate the problem of inmates smoking in the housing units.

Plaintiff also suggests that Defendant Cartwright has been too lenient when disciplining inmates who are caught with tobacco.  However, he fails to provide any evidence to support his assertion that the disciplinary policy is too lenient or any evidence that suggests that Defendant Cartwright knew that the current disciplinary policy put Plaintiff's health at an excessive risk of harm and then disregarded that risk.  Instead, Plaintiff merely complains that the policy is not being enforced in the way in which he would like it enforced.  Such disagreements over the means by which a policy is enforced do not amount to deliberate indifference.  *Cf. Estelle*, 429 U.S. at 107 ("Respondent contends that more should have been done by way of diagnosis and treatment, and suggests a number of options that were not pursued. . . . But the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment.").

## *CONCLUSION*

Defendant Bear is dismissed with prejudice at Plaintiff's request.  Plaintiff's claims for money damages from Defendants in their official capacity are dismissed with prejudice based on Eleventh Amendment immunity. Defendants Patton, Dowling, Price, Cartwright, Pinkerton, and

Marshall are entitled to summary judgment on Plaintiff's claims against them in both their individual and official capacities.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. Defendant Carl Bear is **dismissed with prejudice** at Plaintiff's request.

2. Plaintiff's claims for money damages from Defendants in their official capacity are **dismissed with prejudice** based on Eleventh Amendment immunity.

3. Defendants' motion for summary judgment (Doc. 15) is **granted**.

4. This is a final order terminating this action.

5. A separate judgment in favor of Defendants shall be entered in this matter.

ORDERED THIS 16th day of February, 2016.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

23